IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION

| | | |
|---|---|---|
| Four Winds Behavioral Health, Inc., for itself and for the benefit of and protection of all clients who entrust their behavioral and mental health issues to Four Winds | * * * * | CIVIL ACTION |
| | * | NUMBER |
| *versus* | * * * | |
| The New Mexico Department of Health, through The Behavioral Health Service Division of the New Mexico Human Services Department | * * * * | SECTION |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORIGINAL COMPLAINT SEEKING DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201 FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202 AND A SPEEDY HEARING PURSUANT TO FRCP RULE 57[1]

### *I.  JURISDICTION AND VENUE*

1.  Jurisdiction is invoked pursuant to 28 U.S.C. § 1331, in that this action presents "...federal questions..." which arise under the Constitution and laws of the United States, as hereinafter more fully set forth.

2.  Specifically, the issues raised hereby are controlled by the New Mexico Administrative Code at Title 8, Part 2, providing at NMAC 8.321.2.3:

---

[1]  Because this Court has great discretion in granting the relief sought, *vel non*, and due to the urgency of the matters at issue, this Original Complaint provides far greater details than contemplated by Federal Rule 8(a) and gives the Court an advance look at arguments linking facts to law.

> "The New Mexico medicaid program and other health care programs are administered pursuant to regulations promulgated by the federal department of health and human services under Title XIX of the Social Security Act as amended or by state statute."

3. Jurisdiction is also invoked pursuant to 28 U.S.C. § 1332, in that there exists full diversity of citizenship between plaintiff, Four Winds Behavioral Health, Inc. ("Four Winds"), a citizen of the State of Wyoming and defendant, the New Mexico Department of Health, through the Behavioral Health Service Division of New Mexico's Human Services Department ("New Mexico").

4. The amount in controversy, should supplemental relief be sought pursuant to 28 U.S.C. § 2202, exceeds $75,000, exclusive of interest and costs.

## *II.   DETRIMENTAL RELIANCE AND EQUITABLE ESTOPPEL*

5. Supplemental jurisdiction is also invoked pursuant to 28 U.S.C. § 1367 in that there are common-law claims arising from the nucleus of facts set forth herein that are so related to the claims as to which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Specifically, detrimental reliance and equitable estoppel principles predominate because, in order to obtain a Certificate from New Mexico to provide Intensive Outpatient ("IOP") Services, Four Winds expended hundreds of thousands of dollars, built a team of Masters-credentialed professionals and prepared itself to render IOP services, spanning a period of almost two years.

7. On April 17, 2017, Four Winds received the coveted IOP Certification from the Human Services Department, which acted upon the approval of a Multi-Agency Council composed of New Mexico's Human Services Department ("HSD"), Behavioral Health Services Division ("BHSD"), Medical Assistance Division ("MAD"), Children Youth Families Department ("CYFD") and Children's Behavioral Health Services Division ("CBHSD"), Exhibit A.

8. The controversy before the Court stems from a December 26, 2017 Letter of Direction *suggesting* to Managed Care Organizations ("MCO") that "...they may want to negotiate new pricing for the future...", Exhibit B.

9. The ***essence*** of the April 17, 2017 Certification was that Four Winds would provide IOP-based services and therapy utilizing "...15-minute units..." for reimbursement purposes.

10. The ***effect*** of the December 26, 2017 communication, authored by two Directors of the Human Services Department (as opposed to the five members of the Multi-Agency Council) was that the IOP fee-schedule units would be reduced from 15-minute units to 1-hour units, a fiscally- devastating 75% reduction certain to eliminate the Four Winds IOP program and abandon substance-abuse clients at the worst time in our Nation's history[2].

11. The ***relief*** sought hereby is manifestly just and proper:

☐ A declaration that the April 17, 2017 IOP Certification and the terms of reimbursement using 15-minute units constituted "...the law between the parties..." and was binding on New Mexico and MCO's *ab initio*.

---

[2] The New Mexico Department of Health reported that in 2014, *New Mexico had the 2nd HIGHEST drug overdose rate in the United States.* Viewed from a different statistical perspective, New Mexico's drug overdose death rate was almost twice the National level. Also in 2014, New Mexico citizens suffered *the HIGHEST alcohol-related death rate in the NATION*, Exhibit C-1. Statistics for later years are equally discouraging. In February, 2017, the New Mexico Department of Health published its annual *New Mexico Substance Abuse Epidemiology Profile*, Exhibit C-2, at page v:

> "Over the past 30 years, New Mexico has consistently had among the highest alcohol-related death rates in the United States, and it has had the highest alcohol-related death rate since 1997....**In 2006, the economic cost of excessive alcohol consummption in New Mexico was more than $1.9 billion**, *American Journal of Preventive Medicine*, 2006 45(4):474-486.

- ☐ A declaration that the December 26, 2017 Letter of Direction ("LOD 71") is an absolute nullity and cannot be relied-upon by any MCO to "...negotiate new [IOP] pricing for the future..."

- ☐ A declaration that as a matter of detrimental reliance and equitable estoppel law, no MCO can utilize LOD 71 as a basis for reducing the reimbursement formula applicable to IOP services from 15-minute units to anything less valuable or more onerous.

- ☐ A declaration that no MCO can "claw-back" or seek recovery of alleged overpayments made pursuant to 15-minute units, as a matter of law, *Brown v. Taylor*, 120 N.M. 302, 901 P.2d 720, 723 (1995), cited by New Mexico Supreme Court in *Waters-Haskins v. New Mexico Human Services Department*, No. 31,300, **Maes, Justice**.

- ☐ A declaration that, in the circumstances and unique facts of this case, the application of the doctrine of equitable estoppel is appropriate in order to satisfy "...right and justice[3]..."

## *III. STANDING*

12. Four Winds brings this action on its own behalf and on behalf of its substantial universe of past, present and future IOP clients.

13. Four Winds also brings this action on behalf of clients too fragile to bring their own actions, recognizing that the Supreme Court recognizes 3rd party standing where it would be difficult or impossible for persons whose rights are asserted to present same before any court, *Barrows v. Jackson*, 346 U.S. 249 (1953).

---

[3] See, *Green v. New Mexico Human Services Department, Income Support Division*, 107 N.M. 628, 762 P.2d 915 (1988). (*However, equitable estoppel will be applied against the state where right and justice demand it.*)

4

14. Respectfully, there may *never* have been a time in our Nation's history when mental illness, addiction, violence, broken values, depression, suicide and hopelessness have been as ominous and menacing as they are today.

15. No invective intended, but the New Mexico Department of Human Services has lost sight of who it is expected to protect and thus, Four Winds stands alongside its clientele seeking a declaration of their fragile rights.

16. Although not *formal* plaintiffs, certain clients of Four Winds have waived confidentiality in order to emphasize to this Court the gravity of the issues presented, In Globo Exhibit D[4].

> *If I didn't have FWBH, my life would be in the toilet. I'd probably be going back to prison....For the time I have been here and all that I have learned, I will be leaving here a better man. I am definitely a better father, surrounded by positive people and positive things in my life ..........................................................................***Joseph Acuna.**

> *The reason I'm attending FWBH is because I suffer from alcohol addiction, anger and anxiety....The curriculum [here] is very well taught and explained. My primary counselor is amazing and has really helped me get to the root of my problems. My kids are glad I'm here and want me to be happy and healthy!........***Leandra Chavez.**

> *Before I came to FWBH I had been in the hospital 5 times in one week. I was living in my truck and I had little if any hope for my future. I knew I was one black-out away from not waking up. I wouldn't have been able to attend a program like FWBH without the assistance of Medicaid because I was homeless, jobless, with no money set aside for my living expenses, much less specialized care...................................................................***Cheyenne Fachan.**

---

[4]    At any hearing on the request for Rule 57 expedited consideration, many clients of Four Winds — well-aware that their lives are at stake in the absence of the therapy upon which they rely — will seek leave to appear and testify.

*The reason I'm here is because I'm addicted to drugs and alcohol and was required by a judge to attend an Inpatient program and chose Four Winds Behavioral Health....If not for FWBH, my life would be impacted by my being in jail and using drugs....I believe the 90 days I attended FWBH helped me refocus my thoughts so I can live a sober life with my family and kids and be a productive member of society..................................................................***Thomas Gruber.***

*I am here at FWBH because I have an addiction to alcohol. The counseling has been excellent and the classes are very beneficial to me. I've been in other places but this is more in depth which is my type of learning. I would tell others this program by my story and by people seeing the changes in me............................***Jennifer Jarpe.***

*The reason I chose FWBH is because it's my last chance to get a hold of my life and mend the relationship with my daughter and my siblings. I've been an addict for 18 years and was an IV user. I'm tired of running from my emotions and trying to solve them with my addiction. I've learned to leave all mistakes in the past....I've learned to walk with my head held high......................***Rosendo B. Jurado.***

*I am attending FWBH because I have a drinking problem. I decided to attend FWBH because I heard this program was the best in New Mexico. I have done a lot of growing up while attending FWBH and if I wasn't here, I'd be in prison. I have a relationship with my kids today because of Four Winds....I no longer feel like I'm running. I'm going back to school again since dropping out in the 8th grade. FWBH didn't give up on me and I'm grateful for this program and how it's changed my life......................................***Charmaine Peralta.***

*The reason I am here at FWBH is for my mental treatment and also for my alcohol addiction. If it weren't for this program, I would have still been spinning, doing what I was doing; I would still have been in my addiction...and stuff that goes on in my head. I would tell others that FWBH has the best counselors that will help you through your mental health issues and help you through your addiction. It's like family here and the counselors really care...they care about your well-being.....................................***Arnold Peshlakai.***

> *The reason I'm attending FWBH is because of my addiction to drugs and my struggle with depression....I've received one-on-one counseling and group counseling...I get a benefit just be being in this environment....If it wasn't for FWBH I would not be here. I would be buried in a grave or in prison........................................* **Natacia Vigil.**

> *I came to Four Winds because I have a substance abuse problem and I've been arrested multiple times. The last time I was arrested I asked for help and was referred to Four Winds while in jail....I initially wanted to attend the 90 day IOP but decided it was in my best interest to stay 6 months. For me, this is a life or death situation. If not for FWBH, I would probably be in prison and still using. I could not afford the care and treatment at Four Winds if my insurance wouldn't cover my stay. The IOP program and therapy I have received has not only changed my life, but more than likely saved it. My only wish is that I had been referred here sooner rather than going to jail without treatment............................* **Kathryne Wise.**

17. As detailed at ¶¶ 6 - 10 above, the claimed "confusion" which sparked the December 26, 2017 LOD 71 was over IOP reimbursements.

18. In order to qualify for IOP treatment, a client must have been diagnosed with a substance-abuse disorder that ranks as "severe" pursuant to criteria set forth in the Diagnostic and Statistical Manual of Mental Health Disorders, Version 5, published by the American Psychiatric Association.

19. The clearest measure of IOP "standing" is found in the New Mexico Interagency Behavioral Health guidelines at <u>Exhibit E</u> as follows:

> **"An Intensive Outpatient Program (IOP) provides a time-limited, multi-faceted approach to treatment services for individuals who require structure and support to achieve and sustain recovery. IOP must utilize, at a minimum, a research-based model and target specific behaviors with individualized behavioral interventions."**

20. Because the requirements for implementing an IOP Program are rigorous and demanding, Four Winds began preparation two years before the IOP Certification was awarded, <u>Declaration of Xavia Romero</u>, <u>Exhibit F</u>:

> "It took FWBH over two years to become a State-approved Intensive Outpatient Program (IOP) provider. In order to make this IOP possible, many changes had to be made. FWBH incurred significant expenses in implementing this program; such as the hiring of additional counseling staff with Master-level degrees, a program manager, implementation of curricula, staff training, etc."

21. The quality of professional healthcare providers included the staffing of: (i) Licensed Professional Clinical Counselors ("LPCC"); (ii) Licensed Clinical Social Workers ("LCSW"); (iii) Licensed Mental Health Counselors ("LMHC"); (iv) Licensed Master Social Workers ("LMSW") and (v) Licensed Alcohol and Drug Abuse Counselors ("LADAC").

## *IV.   DECLARATORY JUDGMENT*

22. 28 U.S.C. § 2201 provides that with respect to a case of actual controversy within its jurisdiction, upon filing of an appropriate pleading, this Court"…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought…"

23. In a Declaratory Judgment Action, the respondent (New Mexico) does *not* become a "…defendant…" until after a declaration is made and "…further relief…" is sought pursuant to 28 U.S.C. § 2202.

24. Because a court of competent jurisdiction is not obligated to render declaratory judgment and because it is a matter within this Court's great discretion, Four Winds respectfully requests that this Court give great weight to the § 1746 Declarations submitted with this Original Complaint.

25. Particularly relevant are the Declarations by Four Winds Financial Director Xavia Romero, <u>Exhibit F</u>, and Executive Director Sheena Bachelor-Evridge, <u>Exhibit G.</u>

26. *Compelling* evidence for Declaratory Judgment purposes, however, is the following description in the Guidelines provided with the April 17, 2017 Certification:

### *V. RULE 57*

27. Time is of the essence.

28. As a consequence of the "...suggestion..." made in the December 26 LOD 71, MCO's have stopped paying Four Winds on the basis of 15 minute units and some have begun to "claw back" alleged overpayments made post- April 17, 2017.

29. Four Winds will have to substantially reduce the number of IOP clients it treats, depriving the most important persons who have entrusted their lives and recovery to Four Winds of what may be their "...last hope...".

30. Staff members will be equally impacted and any loss of staff may or will be irreparable if for no other reason than the disruption of delicate balances.

31. By separate pleadings, Four Winds will ask for an expedited hearing pursuant to Rule 57 of the Federal Rules of Civil Procedure.

## *VI. FOUR WINDS AND ITS CONTRIBUTION TO SOCIETY*

32. Four Winds Behavioral Health is a distinctive treatment facility offering comprehensive services for addiction and mental health disorders provided by Licensed Mental Health Therapists and Licensed Alcohol and Drug Addiction Counselors.

33. Four Winds is an unparalleled facility that allows clients to live on and off the property while attending state-of-the-art IOP benefits pursuant to the April 17, 2017 Certification.

34. Pursuant to Sections 8.321.2.6 and 8.321.2.8 of the New Mexico Administrative Code and consistent with the *parens patriae* responsibility of the State of New Mexico to protect its citizens "...so as to ensure....disabled individuals in New Mexico equal partcipation in the life of their respective communities..." the role Four Winds plays is paramount.

35. By any measure, all Four Winds clientele are "...disabled individuals..." to differing degrees.

36. In maintaining an atmosphere of quality mental health support, Four Winds (i) provides 90 to 180-day treatment programs, (ii)conducts after-care programs which guard against relapse, (iii) avails its clients of evening opportunities to engage in group therapy focused on domestic violence, anger management and drug therapy, (iv) maintains a High Complexity Toxicology Laboratory, and (v) has introduced telemedicine therapy, among other state-of-the-art facilities and services.

37. As evidenced by the declarations of ten grateful clients at *In Globo Exhibit D*, FWBH's greatest attribute is invisible to the naked eye: it's state-of-the-art therapy is better described as "..straight from the heart...".

10

37. The quality of professionals at Four Winds is world-class:

- **Sheena Bachelor-Evridge, Executive Director:** *Master of Public Administration; Master of Arts; Licensed Professional Clinical Counselor; Master Addiction Counselor; Substance Abuse Professional; National Certified Gambling Counselor; and National Certified Counselor*

- **Gary A. "Skip" Ritter, Director of Operations:** *Master of Science in Criminal Justice; Master of Science in Psychology; Licensed Mental Health Counselor; Licensed Alcohol and Drug Counselor; and Certified Sex Offender Treatment Specialist.*

- **Bentley Oliver, Clinical Supervisor:** *Master of Science in Counseling and Licensed Professional Clinical Counselor.*

- **Kristi Rhinehart, Utilization Specialist:** *Master of Science in Addictions Counseling; Licensed Alcohol and Drug Counselor; and Master in Addiction Counseling.*

38. All other personnel are equally well-lettered.

### *VII. PARENS PATRIAE*

39. The New Mexico Office of the Attorney General has the following Mission Statement:

> "**Our Mission** is to protect New Mexicans in order to make our communities safer and more prosperous.... We advocate for consumers and those without a voice, empower the public by pro-actively educating them and connecting them with beneficial resources; and serve as legal counsel for the State and its agents."

40. Respectfully, Four Winds believes and therefore avers that the Office of the Attorney General owes a *Parens Patriæ* duty in this *case* which is

inconsistent with the representation of the Department of Human Services under *these* circumstances.

Respectfully submitted,

*/s/   Henry L. Klein*
**Henry L. Klein (T.A.)**
844 Baronne Street
New Orleans, LA 70113
(504) 301-3027
(504) 529-3700
henryklein44@gmail.com

inconsistent with the representation of the Department of Human Services under *these* circumstances.

Respectfully submitted,

/s/   *Henry L. Klein*
**Henry L. Klein (T.A.)**
844 Baronne Street
New Orleans, LA 70113
(504) 301-3027
(504) 529-3700
henryklein44@gmail.com

*Application for admission pursuant to Local Rule 83.2 pending.*

Susana Martinez, Governor
Brent Earnest, Secretary

**HUMAN SERVICES**
DEPARTMENT

Wayne W. Lindstrom, Ph.D.,
Director, Behavioral Health Services Division
CEO, Behavioral Health Collaborative

April 17, 2017

Sheena Bacheler-Everidge
Four Winds Behavioral Health
4100 Barbara Loop SE
Rio Rancho, NM 87124

RE: IOP Certification

Dear Sheena:

Thank you for the opportunity to review your application to serve Medical Assistance Programs (MAP) eligible adults. The Intensive Outpatient Services (IOP) application and approval process is overseen by a multi-agency council. The council consists of staff from Human Services Department's (HSD), Behavioral Health Services Division (BHSD) and Medical Assistance Division (MAD) and by Children Youth Families Department's (CYFD), Children's Behavioral Health Services Division.

It has been determined that the agency's application submission meets the IOP requirements as detailed in 8.321.17 NMAC Intensive Outpatient Services and a provisional status has been issued. The agency's provisional period will begin on the first day the agency renders IOP services. As a provisionally enrolled IOP provider, your agency will receive an on-site audit by the Behavioral Health Services division (BHSD) for adult programs and by the Children Youth Families Division (CYFD) for IOPs serving children/adolescent populations at the end of the 180 calendar days.

If your agency is currently an enrolled MAD provider (52051277), the MAD provider enrollment unit will add your provisionally approved IOP provider specialty to your provider file, thus allowing you to start IOP services as of **April 17, 2017** for the Medical Assistance Program (MAP) eligible recipients that are currently fee-for-service. You should contact the four Medicaid contracted managed care organizations (MCOs) and follow their process for contracting with your agency to render MAD IOP services to their members.

If your agency is not currently an enrolled MAD provider, you will need to include a copy of the approval letter with your Medicaid provider application. You must then submit this letter with your Medicaid Provider Application to Xerox and be approved as a Medicaid provider and enroll each of your IOP clinicians prior to rendering IOP Services.

Please notify BHSD of the date IOP Services are initiated via email to: hsd.csmbhsd@state.nm.us. If there is a delay in the start of IOP Services beyond 90 calendar days from the date of this letter, please contact the Clinical Services Manager at

*Behavioral Health Services Division* • 37 Plaza la Prensa • P.O. Box 2348, Santa Fe, NM 87504-
Phone: (505) 476-9266 • Fax: (505)476-9272

PLAINTIFF'S EXHIBIT A

hsd.csmbhsd@state.nm.us. Please provide a rationale for the delay or your IOP provisional approval may be rescinded due to inactivity.

Should you have any questions, please do not hesitate to contact me at 505.476.9260 or via email at hsd.csmbhsd@state.nm.us. All Medicaid provider enrollment questions should be referred to Tonya Pamatian, Deputy Chief in the Program Policy Bureau/MAD via email at Tonya.Pamatian@state.nm.us.

Sincerely,

Debra Henderlong, LCSW/ME, ACSW
IOP Interagency Council Chair
BHSD

cc: Bryce Pittenger, CYFD
    Mika Tari, BHSD
    Sally Wait, MAD
    Michael Hock, CYFD
    Tonya Pamatian, MAD
    Debra Basey, MAD

Behavioral Health Services Division • 1190 St. Francis Drive, N-3300 • P.O. Box 2348, Santa Fe, NM 87504-2348
Phone: (505) 827-2858 • Fax: (505) 827-0097

-100-

**Alcohol and/or Drug Services**
**Intensive Outpatient Program (IOP)**
**HCPCS H0015**
**(15 minute unit)**

Effective date: 11.13.09

**Service Definition:**
An Intensive Outpatient Program (IOP) provides a time-limited, multi-faceted approach to treatment service for individuals who require structure and support to achieve and sustain recovery. IOP must utilize, at a minimum, a research-based model and target specific behaviors with individualized behavioral interventions.

Treatment services should be linguistically and culturally-sensitive and incorporate recovery/resiliency values into all service interventions. Treatment services should address substance use disorders as well as co-occurring mental health disorders when indicated. The IOP services are provided through an integrated multi-disciplinary approach (not necessarily on-site) or through coordinated, concurrent services with MH providers, with the intent being that the IOP service does not exclude consumers with co-occurring disorders.

| | |
|---|---|
| **Source of Funding** | HSD-TANF, HSD-BHSD, HSD-MAD<br><br>Not all funding sources cover all populations. |
| **Target Population** | Adults aged 18 and over diagnosed with substance abuse disorders or co-occurring disorders (mental illness and substance abuse) that meet the American Society of Addiction Medicine's (ASAM) patient placement criteria for Level II—Intensive Outpatient Treatment.<br><br>OR<br><br>Youth aged 13-17 diagnosed with substance abuse disorders or co-occurring disorders (mental illness or serious emotional/behavioral disturbances and substance abuse) or that meet the ASAM patient placement criteria for Level II—Intensive Outpatient Treatment.<br><br>Note on youth and transition-age young adults (18-21): the youth population is defined as "17 and under", unless already engaged in a youth IOP program. This population should engage in IOP treatment in an environment separate from the adult consumers. |
| **Program Requirements** | Before engaging in an IOP program the consumer must have a Diagnostic Evaluation and an Individualized Service Plan that includes IOP as an intervention and addresses all behavioral health concerns.<br><br>IOP services must be rendered through a research-based or evidence-based model, including but not restricted to:<br>• Matrix Model Adult Treatment Model<br>• Matrix Model Adolescent Treatment Model<br>• Minnesota Treatment Model<br>• Integrated Dual Disorder Treatment<br><br>Note: Any models other than those identified above must be approved by |

1

| | HSD/MAD for Medicaid or the Collaborative, as appropriate for other funding sources.<br><br>Each IOP agency is required to incorporate and utilize a system of program outcome evaluation.<br><br>IOP program core services:<br>1. discharge/transition services planning<br>2. individual and group therapy (group membership may not exceed 15 in number)<br>3. psycho education for the individual and their family<br><br>IOP program treatment activities:<br>IOP is a structured substance abuse treatment program that can address co-occurring mental health disorders. Treatment services should be linguistically and culturally-sensitive, incorporate recovery/resiliency values, and should utilize a research-based or evidence-based model.<br><br>Treatment should follow the provider's IOP model.<br><br>Co-occurring mental health and substance use disorders:<br>Co-occurring mental health disorders are the expectation not the exception in clients with serious substance use disorders. Therefore, IOP needs to accommodate the needs of consumers with co-occurring substance use and mental health disorders.<br><br>Treatment services are provided through an integrated multi-disciplinary team approach which includes staff expertise in both addiction and mental health treatment. This multi-disciplinary approach can be fulfilled by program staff or by coordinated, concurrent services with MH providers. The multidisciplinary team uses ONE service plan to direct coordinated, individualized care for all persons enrolled in the IOP. Treatment services may include medication management to oversee use of psychotropic medications.<br><br>Duration<br>The duration of IOP intervention is typically 3 to 6 months. The amount of weekly services per individual is directly related to the goals and objectives specified in the individual's treatment plan.<br><br>Should aftercare be needed by a consumer for substance abuse or co-occurring disorders upon conclusion of the IOP program, outpatient therapy codes should be billed.<br><br>**Note:** All IOP providers should utilize research-based or evidence-based models; IOP personnel and agency records must contain documentation of the training of IOP staff according to the agency's IOP treatment model. |
|---|---|
| **Provider Requirements** | The organization must be a legally recognized entity in the United States, qualified to do business in New Mexico, and must meet standards established by the State of NM or its designee, and requirements of the funding source. |

2

-102-